# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                     )     Chapter 7
                                           )     Case No. 14-11111 (CSS)
LTC HOLDINGS, INC. ., *et al.*,            )     (Jointly Administered)
                                           )
                        Debtor.            )
_____        )
SUPERIOR CONTRACTING GROUP                 )
INC.,                                      )
                                           )
                        Plaintiff,         )
            v.                             )     Adv. No.: 16-50948 (CSS)
                                           )
AVINASH RACHMALE,                          )
                                           )
                        Defendant.         )
_____        )

## OPINION[1]

HILLER LAW, LLC                  POTTER ANDERSON &
Adam Hiller                      CORROON LLP
1500 North French Street         Hercules Plaza, Sixth Floor
2nd Floor                        1313 North Market Street
Wilmington, DE  19801            P.O. Box 951
                                 Wilmington, DE  19899-0951

        -and-                    Counsel for Plaintiff

Ian M. Williamson
Jordan B. Segal
Mantese Honigman, P.C.
1361 E Big Beaver Road
Troy, MI  48083

Counsel for Defendant

Dated: June 12, 2018

Sontchi, J. _____
_____

---

[1] The Court herein makes no findings of fact and conclusions of law, beyond those stipulated in the Order, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## INTRODUCTION[2]

Before the Court is a *sua sponte* Order wherein the parties were asked to brief three issues, *i.e.*, whether the Proceeding should be dismissed for lack of subject matter jurisdiction, if the Court should abstain from hearing the Proceeding, or if the Court should remand the Proceeding to state court.

The law of the case doctrine and a review of the jurisdictional issues under Third Circuit law both lead the Court to establish a finding of "related to" jurisdiction in this Proceeding. Neither abstention, nor remand to state court are appropriate. Given such findings, the Court will maintain jurisdiction over the Proceeding.

## JURISDICTION AND VENUE

Courts generally maintain "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."[3] This obligation has been applied to bankruptcy courts when reviewing questions of subject matter jurisdiction *sua sponte*,[4] as codified under FED. R. BANKR. P. 7012(b), incorporating FED. R. CIV. P. 12(h).

The Court may also review certain questions of abstention and remand. A court may not apply the principles of mandatory abstention absent a "timely motion of a party."[5] A motion for abstention has not been filed here. Yet nothing prevents a

---

[2] Capitalized terms herein shall have the meaning ascribed to them *infra*.

[3] *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)).

[4] *See In re Hall's Motor Transit Co.*, 889 F.2d 520, 522 (3d Cir. 1989).

[5] *Street v. The End of the Road Trust*, 386 B.R. 539, 547 (Bankr. D. Del. 2008) (citing *Stoe v. Flaherty*, 436 F.3d 209, 219, n. 4 (3d Cir. 2006)).

bankruptcy court from considering the issue of permissive abstention *sua sponte*.[6]  To the extent a bankruptcy court finds reasons for permissive abstention, the court may also "remand such claim or cause of action on any equitable ground."[7]

To the extent the Court maintains jurisdiction over this Proceeding, venue is proper before the United States Bankruptcy Court for the District of Delaware under 28 U.S.C. §§ 1408 and 1409.  The Court has the judicial authority to enter a final order.

## STATEMENT OF FACTS

### A. Procedural Background

Superior Contracting Group, Inc. ("Plaintiff" or "Superior") filed the current action against Avinash N. Rachmale ("Defendant" or "Rachmale") in the United States District Court for the Western District of Tennessee (the "Proceeding").[8]  The Western District of Tennessee went on to issue an opinion granting Defendant's Rule 12(b)(3) motion to dismiss for improper venue and transferring the Proceeding to the United States District Court for the Eastern District of Michigan.[9]

The Eastern District of Michigan subsequently issued another opinion granting Rachmale's second Rule 12(b)(3) motion to dismiss for improper venue and ordered the Proceeding transferred to the United States District Court for the District of Delaware.[10]

---

[6] *Fruit of the Loom, Inc. v. Magnetek, Inc. (In re Fruit of the Loom, Inc.)*, 407 B.R. 593, 589-99 (Bankr. D. Del. 2009) (citing 28 U.S.C. § 1334(c)(1)).

[7] 28 U.S.C. § 1452(b).

[8] Adv. Pro. No. 16-50948, D.I. 15, Exh. 7. All references to the docket, cited as "D.I." *infra*, refer to this adversary proceeding unless otherwise stated.

[9] *Id.*

[10] *Id.* at Exh. 8.

The Delaware District Court later referred the Proceeding to this Court,[11] where the Defendant filed a motion to dismiss, which this Court denied.

The Court later issued a *sua sponte* order (the "Order") requesting the parties' written positions on three questions: (1) the Proceeding's proper subject matter jurisdiction, (2) the Court's option to permissively abstention from hearing the Proceeding, and (3) the possible removal of the Proceeding to state court.[12]  Both Defendant and Plaintiff filed writings supporting their positions on the April 7, 2017 deadline, and Defendant filed a supplemental response five days later.[13]  The Order has been fully briefed and is the subject of this memorandum.[14]

### B. Factual Background

*1. Rachmale and Lakeshore*

Lakeshore Engineering Services, Inc. ("Lakeshore") was founded by Rachmale to provide construction services to municipal, commercial, and government clients. Initially Rachmale acted as Lakeshore's President, CEO, director, and majority shareholder.[15]  In 2010, as a result of a merger, Lakeshore became a subsidiary of

---

[11] *Id*. at Exh. 9.

[12] D.I. 12.

[13] D.I. 15-17. Defendant's supplemental briefing, as detailed *infra*, addresses whether to withdraw the reference for this Proceeding, an issue which was raised by the Plaintiff without request from the Court. Because neither the Court nor a separate motion by the parties has asked for briefing on whether to withdraw the reference, arguments for withdrawal will not be considered at this time.

[14] D.I. 19.

[15] D.I. 15, Exh. 1, ¶ 42.

Lakeshore Toltest Corporation ("LTC").  Post-merger, Rachmale continued in his role as

President and CEO of both the new entity, LTC, and Lakeshore until at least 2012.[16]

In 2011, LTC amended and restated its articles of incorporation.[17]  The articles of

incorporation contain the following indemnification language:

> The Corporation shall, to the maximum extent permitted
> from time to time under the law of the State of Delaware,
> indemnify any person who is or was a party or is threatened
> to be made a party to any threatened, pending or completed
> action, suit, proceeding or claim, whether civil, criminal,
> administration or investigative, (i) by reason of the fact that
> such person is or was a director is or was serving at the
> request of the Corporation as a director of another
> corporation, partnership, joint venture, trust or other
> enterprise … or (ii) in such person's capacity as an officer,
> employee or agent of the Corporation or in such person's
> capacity as an officer … of another corporation … against
> expenses (including attorney's fees and expenses),
> judgments, fines, penalties and amounts paid in settlement
> incurred (and not otherwise recovered) in connection with
> the investigation, preparation to defend or defense of such
> action, suit, proceeding or claim; provided, however, that the
> foregoing shall not require the Corporation to indemnify any
> person in connection with any action … initiated by or on
> behalf of such person other than an action authorized by the
> Board of Directors … Any person seeking indemnification …
> shall be deemed to have met the standard of conduct
> required for such indemnification unless the contrary shall
> be established.[18]

The indemnification also covers "current and as-incurred basis expenses incurred

… defending or otherwise participating in any action, … in advance of the final

disposition of such action," but only "upon presentation of (i) an unsecured written

---

[16] *Id.* at ¶¶ 37-39.

[17] *Id.* at Exh. 2.

[18] *Id.*

undertaking to repay such amounts if it is ultimately determined that the person is not entitled to indemnification … and (ii) adequate documentation reflecting such expenses."[19]

Rachmale was removed from his officer positions in LTC by October 2012, and resigned from LTC's board of directors on April 2, 2014.[20]

*2. Superior's Litigation Against Lakeshore and Rachmale*

In May 2009, Superior and Lakeshore entered into a Mentor/Protégé Agreement for the purpose of pursuing certain U.S. government contracts.[21] Superior and Lakeshore entered into a number of joint venture agreements for projects being constructed by the Army Corps of Engineers through this arrangement.[22] Under the terms of these joint ventures, Superior was to receive 51% of the ventures' profits and Lakeshore the remainder.[23] All works on the venture projects and final payment by the Army Corps of Engineers was completed by April 29, 2013.[24] These facts are generally not in dispute.[25]

On August 23, 2013, Superior filed an action against Lakeshore in the Chancery Court of Tennessee for the Thirteenth Judicial District at Memphis, Shelby County (the

---

[19] *Id.*

[20] *Id.* at Exh. 1.

[21] *Id.* at Exh. 4.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *See also id.* at p.3.

"Tennessee Chancery") asserting claims for contractual breach of the joint venture agreements and seeking accounting for the joint ventures under a special master.[26]

In May 2014, Lakeshore, LTC, and other entities (collectively, the "Debtors") filed voluntary petitions for Chapter 7 relief in this Court.[27]  A suggestion of bankruptcy and enforcement of the automatic stay was sent to Superior regarding their case in front of the Tennessee Chancery.[28]  The Tennessee Chancery case saw no further action after the notice.[29]

In August 2014, Superior filed the present federal court Proceeding against Rachmale in the Western District of Tennessee.[30]  Superior alleged in its complaint claims of conversion, fraud, and intentional misrepresentation.  In addition, Superior sought to pierce the corporate veil and hold Rachmale "liable for all obligations owed by Lakeshore to Superior Contracting" because of acts committed by Rachmale while controlling Lakeshore.[31]

The Western District of Tennessee found that the Proceeding satisfied the requirements for federal diversity jurisdiction, but venue was more appropriate in the

---

[26] *Id.* at Exh. 4.

[27] Case No. 14-11111, D.I. 1, 14. Debtors include LTC Holdings, Inc., LTCCORP, INC., LTCCORP Government Services, Inc. a/k/a Lakeshore Toltest Corporation, LTCCORP Government Services-MI, Inc. a/k/a Lakeshore Engineering Services, Inc.; Lakeshore Group; LTC Corp Michigan, LTCCORP Government Services-OH, Inc. a/k/a TolTest, Inc.; LTC; LTC Ohio; LTC Corp; LTC Corp Ohio, and LTCCORP E&C Inc.

[28] D.I. 15, Exh. 6.

[29] *Id.* at p. 3-4.

[30] *Id.* at Exh. 3.

[31] *Id.*

Eastern District of Michigan.[32]  The District Court for the Eastern District of Michigan again reviewed the issue of venue, but this time with regard to whether the Proceeding should be transferred to the District of Delaware given the Debtors' bankruptcy filings. The Eastern District of Michigan held that the Proceeding "related to" the Debtors' bankruptcy because of both Rachmale's possible indemnification claim against Lakeshore and the intertwined action to pierce the corporate veil of Lakeshore against Rachmale.

The Proceeding was again transferred, this time to the District Court for the District of Delaware, which later referred the Proceeding to this Court.

## LEGAL DISCUSSION

### A. Bankruptcy Court Jurisdiction

The first question raised by the Order concerns whether this Court has subject matter jurisdiction over the Proceeding.

Pursuant to 28 U.S.C. § 1334, "district courts shall have original and exclusive jurisdiction of all cases under title 11 … [and] original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."[33]  A district court may provide, under section 157(a), that any such cases "be referred to the bankruptcy judges for the district," and the bankruptcy court "may hear and determine [such] cases … and may enter appropriate orders and judgments, subject

---

[32] *Id.* at Exh. 6.

[33] 28 §§ 1334 (a) and (b).

8

to review under section 158 of this title."[34]  The United States District Court for the District of Delaware has so provided in this Proceeding.

Defendant argues that the Court should not review the issue of subject matter jurisdiction given the prior decision of the District Court for the Eastern District of Michigan.  However, if the Court does review the jurisdictional issue, Defendant claims "related to" jurisdiction exists over this Proceeding because of both contractual indemnity obligations and Plaintiff's attempt to pierce the corporate veil.  Plaintiff counters that none of the claims in the Proceeding suffice for either core jurisdiction or non-core, "related to" jurisdiction.  Plaintiff argues in the alternative that its right to a jury trial prevents this Court from exercising jurisdiction.

*1. Res Judicata Effects of Prior Jurisdictional Ruling*

As a threshold matter, the Defendant submits that this Court should respect the prior ruling of the Eastern District of Michigan regarding this Court's proper subject matter jurisdiction.

Defendant does not invoke any one doctrine in support of this point, rather they rely on the notion that a "jurisdictional decision is binding upon all sides … [and] to rule[ ] otherwise now … would subject the parties to inconsistent holdings." [35] Defendant notes that jurisdictional decisions by federal courts are preclusive and not subject to collateral attack, and final decisions by a bankruptcy court may have *res judicata* effect on questions of subject matter jurisdiction.

---

[34] *Id*. § 157(a) and (b)(1).

[35] D.I. 15, p. 6.

It has been well established that *res judicata* applies to jurisdictional findings "when a party … has had an opportunity to litigate the question of subject matter jurisdiction [and] attempts to reopen that question in a collateral attack after an adverse judgment."[36] The record demonstrates that the issue of "related to" jurisdiction has already been decided once by the Eastern District of Michigan. However, orders granting a transfer of venue are generally not considered final judgments subject to *res judicata*.[37] Give that the two prior district courts limited their holding to improper venue and transfer, their actions do not constitute final judgments subject to the collateral order doctrine.

The "law of the case" doctrine nevertheless applies to the Eastern District of Michigan's opinion. As stated by the Supreme Court, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."[38] Applying this view, the Third Circuit has defined the law of the case doctrine as a principle that "limits the extent to which an issue will be reconsidered once the court has made a ruling on it."[39]

Law of the case proves particularly important in assessing transfer decisions. In the words of the Supreme Court, a transferee that chooses to disregard a prior transfer

---

[36] *Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.)*, 435 B.R. 894, 901 (Bankr. D. Del. 2010) (citing *Ins. Corp. of Ireland, Ltd. V. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n. 9 (1982)).

[37] *In re Delaware and Hudson Railway Co.*, 96 B.R. 469, 472 (D. Del. 1989) (citing *Nascone v. Spudnuts, Inc.*, 735 F.3d 763, 722 (3d Cir. 1984)) (noting that the Third Circuit has found orders granting or denying motions to transfer venue not immediately appealable as final orders).

[38] *Arizona v. California*, 460 U.S. 605, 618 (1983).

[39] *Fagan v. City of Vineland*, 22 F.3d 1283, 1290 (3d Cir. 1994) (citing *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162 (3d Cir. 1982)).

decision risks "send[ing] litigants into a vicious circle of litigation."[40]  Allowing such results would "undermine public confidence in our judiciary, squander private and public resources, and commit far too much of [the Supreme Court's] calendar to the resolution of fact-specific jurisdictional disputes."[41]  For this reason, transfer decisions are rarely to be reassessed, as long as "the transferee court can find the transfer decision *plausible*, its jurisdictional inquiry is at an end."[42]  Applying that principle to an adversary proceeding with two prior transfer decisions, Judge Shannon in *Semcrude* ruled that the law of the case counseled against further action by the bankruptcy court.[43]  "The transfer decisions of other courts should be respected insofar as jurisdiction plausibly lies in this Court."[44]

Law of the case generally "directs a court's discretion, [but] does not limit the tribunal's power."[45]  A trial court may consequently reconsider an issue addressed in an earlier ruling under certain limited circumstances, such as when it would clarify an ambiguity or, even if the ruling is unambiguous, prevent clear error or an unjust result.[46]  However, "a successor judge should not lightly overturn decisions of his

---

[40] *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).

[41] *Christianson*, 486 U.S. at 816.

[42] *Id*. at 819 (emphasis added).

[43] *In re Semcrude, L.P.*, 442 B.R. 258, 277 (Bankr. D. Del. 2010).

[44] *In re Semcrude*, 442 B.R. at 277 (citing *Christianson*, 486 U.S. at 800).

[45] *Arizona v. California*, 460 U.S. at 618; *see Messenger v. Anderson*, 225 U.S. 436, 444 (1912).

[46] *See, e.g., Fagan*, 22 F.3d at 1290; *Swietlowich v. County of Bucks*, 610 F.2d 1157, 1164 (3d Cir. 1979); *Al Tech Specialty Steel Corp. v. Allegheny Int'l Credit Corp.*, 104 F.3d 601, 605 (3d Cir. 1997).

predecessors in a given case."[47]  If a judge does overturn a decision, they must state the reason for the change on the record and take appropriate steps to ensure "the parties are not prejudiced by reliance on the prior ruling."[48]

The Eastern District of Michigan held that the claims in this Proceeding "clearly related to the debtor Lakeshore's bankruptcy proceedings before the District of Delaware."[49]  The court concluded that Superior's complaint alleged "joint conduct" claims against both Debtor Lakeshore and Rachmale, as well as a possible indemnification claim by the Defendant against Debtor LTC for his role as officer and director of Debtor Lakeshore.[50]  Because of the "joint conduct" claims and possible indemnification, the court granted Defendant's motion to dismiss, in part, on the basis of improper venue and ordered the case transferred to the District of Delaware.[51]

The Eastern District of Michigan's opinion partially conflicts with law in the Third Circuit.  The court's use of *Dow Corning*, where the Sixth Circuit approved a broad "related to" jurisdictional umbrella for third-party claims stemming from indemnifications, was rejected by the Third Circuit in *Federal-Mogul*.[52]  Two years later,

---

[47] *Fagan*, 22 F.3d at 1290.

[48] *Swietlowich*, 610 F.2d at 1164.

[49] *Superior Contracting Group, Inc. v. Rachmale*, 2016 WL 1242432, *4 (E.D. Mich. Mar. 30, 2016).

[50] *Id.* at *3.

[51] *Id.* at *3-4.

[52] *See Federal-Mogul Global, Inc.*, 300 F.3d 368, 380-81 n.8 (3d Cir. 2002) (citing *Lindsey v. O'Brien (In re Dow Corning Corp.)*, 86 F.3d 482, 494 (6th Cir. 1996)).

the Third Circuit explicitly held that *Pacor*, and not *Dow Corning*, "provides the controlling standard for assessing 'related to' bankruptcy jurisdiction."[53]

But as the analysis *infra* describes, the Proceeding has non-core, "related to" jurisdiction under *Pacor* and its progeny because of both LTC's contractual indemnification of Rachmale and Superior's claim to pierce the corporate veil against Rachmale because of derivative conduct of Debtor Lakeshore. While the rule for jurisdiction of third-party claims differs between the Third and Sixth Circuits, any differences do not affect the result and do not rise to the level of clear error or unjust result here.

Before this Court, then, is a situation closely parallel to that of *Semcrude*. The issue of "related to" jurisdiction has already been properly briefed and decided upon by a federal court. In the process, the Proceeding has been twice transferred. Critically, "related to" jurisdiction more than plausibly exists for this Proceeding under Third Circuit law. As set out by the Supreme Court in *Christianson*, this plausible jurisdictional hook counsels the Court to honor the prior decision of the Eastern District of Michigan. The law of the case doctrine counsels this Court to not issue a different jurisdictional finding under the Order.

---

[53] *See In re Combustion Engineering, Inc.*, 391 F.3d 190, 227 (3d Cir. 2004) (citing *Federal-Mogul*, 300 F.3d at 381).

*2. Core and "Related to" Jurisdiction*

The parties further consider whether this Court has any jurisdiction over the Proceeding, primarily as a non-core proceeding "related to" the Debtors' bankruptcy. To the extent the Court finds appropriate jurisdiction here, such a result will support the law of the case determination *infra* and provide its own support for retaining or abstaining from the Proceeding.

A bankruptcy court's jurisdiction extends to four types of matters: (1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11.[54] The first three categories are considered "core" proceedings, and the last category "non-core" proceedings.[55] To the extent a proceeding fails to qualify under any of these four types, the bankruptcy court lacks jurisdiction over the matter.[56]

Plaintiff contends, and Defendant does not dispute, that the Proceeding does not fulfill the elements necessary for "core" jurisdiction.  As the Third Circuit delineated in *Halper*, core proceeding are those matters listed under 28 U.S.C. § 157(b), as well as proceedings that either (1) invoke a substantive right under the Bankruptcy Code or (2) could only arise within a bankruptcy context.[57]  The current Proceeding, which asserts a

---

[54] *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l., Inc.)*, 372 F.3d 154, 162 (3d Cir. 2004).

[55] *New Jersey Dep't of Envtl. Protection v. Occidental Chemical Corp. (In re Maxus Energy Corp.)*, 560 B.R. 111, 121 (Bankr. D. Del. 2016).

[56] *Broadhollow Funding, LLC v. Mortg. Servicing, Inc. (In re Am. Home Mortg., Holdings, Inc.)*, 390 B.R. 120, 129-130 (Bankr. D. Del. 2008).

[57] *See Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999).

series of state law claims against a third-party affiliated with the Debtors, does not fulfill any of these requirements.

This leaves the Court to review whether this Proceeding fulfills the requirements for "related to" jurisdiction. Both parties agree that the Proceeding is "non-core," but a dispute remains as to whether the Proceeding is "related to" the bankruptcy. Defendant contends that the Proceeding relates to the bankruptcy through (1) the contractual indemnity between Rachmale and Debtor LTC and (2) Superior's attempt to pierce the corporate veil for joint conduct associated with Debtor Lakeshore.

In response, Plaintiff asserts that the Proceeding is not "related to" the bankruptcy because none of the Debtors are party to the lawsuit, the Trustee has not sought to intervene, nor has Rachmale asserted a third-party complaint against any Debtors in his answer. Plaintiff further argues that its right to a jury trial on the Proceeding prevents this Court from asserting jurisdiction.

A civil proceeding that is "related to" a title 11 case may be subject to bankruptcy court jurisdiction. Under Third Circuit law, as agreed upon in principle by the Supreme Court, a case relates to a bankruptcy proceeding if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[58] Key to this test is the word "conceivably," which does not require "certainty, or even likelihood."[59] So long as a proceeding "*may* impact … debtor's rights, liabilities,

---

[58] *Celotex Corp. v. Edwards*, 514 U.S. 300, 115 S. Ct. 1493, 1498-99, 131 L. Ed. 1d 403 (1995) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1985)) (internal quotations omitted).

[59] *In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 264-65 (3d Cir. 1991) (quoting *In re Wolverine Radio Co.*, 930 F.2d 1132, 1143 (6th Cir. 1991)).

options, or freedom of action or the handling and administration of the bankrupt estate[,]" the test is satisfied.[60]  To the extent "related to" jurisdiction attaches through either of the Defendant's arguments, the Court retains the authority to hear the Proceeding.  Each of the parties' arguments is addressed below.

*i. Indemnification Provision*

Rachmale first contends that the possible indemnification claim he can assert under LTC's amended articles of incorporation creates "related to" jurisdiction. Plaintiff does not respond to this argument.

As the Third Circuit noted in *Pacor*, an indemnification claim may, but does not necessarily, create "related to" bankruptcy jurisdiction.[61]  The *Pacor* test for "related to" proceedings requires that any suit "affect the bankruptcy proceeding without the intervention of another lawsuit."[62]  Thus, "there is no related-to jurisdiction over a third-party claim if there would need to be another lawsuit before the third-party claim could have any impact on the bankruptcy proceedings."[63]

Unlike common law indemnification claims, contractual indemnifications generally "may … present[ ] a more direct threat to … reorganization."[64]  Yet that does "not mean to imply that contractual indemnity rights are in themselves sufficient to

---

[60] *Marcus Hook,* 943 F.2d at 264 (quoting *In re Smith*, 866 F.2d 576, 580 (3d Cir. 1989)) (internal quotations omitted).

[61] *Pacor*, 743 F.2d at 995.

[62] *Federal-Mogul*, 300 F.3d at 382.

[63] *Id.*

[64] *In re W.R. Grace & Co.*, 591 F.3d 164, 173-74 (3d Cir. 2009) (quoting *In re W.R. Grace & Co. v. Libby Claimants*, 2008 WL 3522453, 20008 U.S. Dist. LEXIS 61361 (D. Del. 2008)).

bring a dispute within the ambit of related-to jurisdiction."[65]  Such a determination must be done on "a fact-specific, case-by-case basis."[66]  A contractual indemnity that is "related to" the bankruptcy case must be "clearly established and … accrued upon the filing of a civil action."[67]  In contrast, if the "indemnification is contingent on a factual finding in an action not involving the bankruptcy debtor and requires the commencement of another lawsuit to establish that right, there is no effect on the bankruptcy estate and thus no 'related to' jurisdiction."[68]

*Pacor*, *Federal-Mogul*, and associated cases ask the Court to consider two key questions: "(1) does the action against the party seeking indemnification automatically result in debtor's liability for indemnification; and (2) is a subsequent lawsuit against the debtor required prior to a determination of indemnification?"[69]  An indemnification provision will not create "related to" jurisdiction when the answer to the first question is no or the answer to the second is yes.[70]

The Eastern District of Pennsylvania recently applied the *Pacor* test to a broad contractual indemnification more restrictive than the one in this Proceeding.  In that case, the indemnity covered all actions except those for "gross negligence or willful misconduct," as well as assuming "the defense and the expense of defending against

---

[65] *W.R. Grace*, 591 F.3d 174 n. 9.

[66] *Id.*

[67] *Bank of New York, Mellon Trust Co., NA v. Becker (In re Lower Bucks Hosp.)*, 488 B.R. 303, 314 (E.D. Pa. 2013).

[68] *Becker*, 488 B.R. at 314 (citing *Federal-Mogul*, 300 F.3d at 382).

[69] *In re W.R. Grace & Co.*, 412 B.R. 657, 667 (Bankr. D. Del. 2009) (citing *Steel Workers Pension Trust v. Citigroup, Inc.*, 747, 751 (E.D.Pa. 2003)).

[70] *Steel Workers Pension Trust*, 295 B.R. at 753.

claims, even though [the third party's] liability ha[d] not yet been established."[71]  The

court determined that the indemnity was (1) at least partially triggered upon filing of

the action and (2) not contingent on a finding of liability, thus "related to" jurisdiction

existed.[72]

In the pre-*Federal-Mogul* era as well, the Third Circuit held that "related to"

jurisdiction exists in cases where "key employees of the debtor were sued and where

there was a right of indemnification."[73]  In *Belcufine v. Aloe*, for example, the Third

Circuit upheld a finding of "related to" jurisdiction for a state proceeding against

corporate officers because the debtor's by-laws indemnified the officers for any amount

recovered by the litigants in the suit.[74]  Notably, the mere fact that a debtor might

defend against an officer's indemnification claim does not remove the "related to"

jurisdiction of a bankruptcy court.[75]

Plaintiff attaches LTC's articles of incorporation, which "indemnify any person

who is or was a party or is threatened to be made a party to any threatened, pending or

completed action … by reason of the fact that such person is or was … serving at the

request of the Corporation as a director of another corporation, partnership, joint

venture, trust or other enterprise …"  This same indemnification extends to cover

officers and employees of LTC and its direct subsidiaries.  The indemnity covers

---

[71] *Becker*, 488 B.R. at 316.

[72] *Id.*

[73] *In re Federal-Mogul Global, Inc.*, 282 B.R. 301, 310 (Bankr. D. Del. 2002) (citing *Belcufine v. Aloe*, 112 F.3d 633 (3d Cir. 1997)).

[74] *See Belcufine*, 112 F.3d at 636, 38.

[75] *See Broadhollow*, 390 B.R. at 131-32 (citing *Belcufine*, 112 F.3d at 633).

"against expenses (including attorney's fees and expenses), judgments, fines, penalties and amounts paid in settlement incurred (and not otherwise recovered) in connection with the investigation, preparation to defend or defense of such action …"[76]

The indemnity further describes how LTC "shall pay on a current and as-incurred basis expenses incurred … in defending or otherwise participating in any action … upon presentation of (i) an unsecured written undertaking to repay such amounts if it is ultimately determined that the person is not entitled to indemnification hereunder and (ii) adequate documentation reflecting such expenses."[77]  To the extent a dispute exists on whether the indemnity applies, "[a]ny person seeking indemnification … shall be deemed to have met the standard of conduct required for such indemnification unless the contrary shall be established."[78]

The language quoted above represents a broad, yet standard, indemnification by a parent corporation, LTC, of its subsidiaries, including Lakeshore.  The indemnity covers directors and officers, including former President, CEO, and director Rachmale; and the terms clearly cover actions pre-judgment, regardless of fault by the individual director.  The only written exception to the indemnification concerns actions "initiated by or on behalf of such [covered] person …," which is not the case for this Proceeding brought by Superior against Rachmale.[79]

---

[76] D.I. 15, Exh. 2.

[77] *Id.*

[78] *Id.*

[79] *Id.*

To the extent Rachmale is entitled to the indemnification, there is no need for him to bring a new action because the indemnity is automatically triggered. The language stipulates that Rachmale need only sign a writing agreeing to repay costs to the extent it is later determined not to be covered by the indemnification and provide documentation of his expenses. If LTC wishes to challenge his indemnification claim, *LTC* must initiate such proceeding to undo the *presumed* applicability of the indemnity. Any possible defenses by the Debtors against Rachmale's claim are not enough to derail jurisdiction over the Proceeding.[80] In other words, the Debtors' liability to Rachmale under the indemnification is not contingent on a finding of liability.

Whether or not Rachmale has asked the Court for indemnification at this time is irrelevant,[81] Rachmale's indemnification claim has fully vested and can be acted upon at any point during the Proceeding. The Court thus finds that Rachmale's potentially indemnification claim satisfies the *Pacor* test for "related to" jurisdiction.

---

[80] *Broadhollow*, 390 B.R. at 131-32.

[81] It is possible that Rachmale's indemnification claim is barred. The bar date to file proof of claims in the Debtors' cases was May 20, 2014. To the extent that Rachmale's indemnification claim arose immediately upon Superior's filing of the action against Rachmale, such bar date may be applicable to any indemnification claim brought against the Debtors. Rachmale has filed a claim in the Debtors cases, but it does not relate to any possible indemnification. However, the bar date may not apply to an indemnity claim relating to a later judgment against Rachmale. Furthermore, as described *infra*, this does not affect the jurisdictional hook created from the claim to pierce the corporate veil.

*ii. Claim to Pierce the Corporate Veil*

Defendant next claims that "related to" jurisdiction exists due to Superior's claim to pierce the corporate veil from LTC to Rachmale, "where liability is alleged to result from the *joint conduct* of the debtor and non-debtor defendant[ ]."[82]

It has been established in the Third Circuit that "actions by a creditor to pierce the corporate veil, or alter ego actions against the debtor corporation, are often considered non-core, 'related to' proceedings."[83]  Similarly, alleged claims where "individual defendants abused the corporate form of the debtor corporations to defraud its creditors" have also been found to create non-core, "related to" jurisdiction.[84]

While no cases within this circuit specifically extend bankruptcy court jurisdiction to veil piercing claims brought by and against non-debtor third parties, the Third Circuit has acknowledged that certain third-party cases may still "relate to" a debtor's bankruptcy if they create derivative liability.[85]  As long as a proceeding does not require an entirely separate action for a debtor to incur liability, a derivative claim will satisfy the Third Circuit's test under *Pacor*.[86]

Yet any attempt to pierce the corporate veil through a debtor's corporate structure must necessarily create liability on the part of the debtor.  An "attempt to

---

[82] D.I. 15, p.10.

[83] *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1239 (3d Cir. 1994) (citing *Davis v. Merv Griffin Co.*, 128 B.R. 78, 96 (D.N.J. 1991)); *see also In re Maxus Energy Corp.*, 571 B.R. 650, 661 (Bankr. D. Del. 2017).

[84] *In re Jamuna Real Estate,* LLC, 357 B.R. 324, 331 (Bank. E.D. Pa. 2006).

[85] *See Combustion Engineering*, 391 F.3d at 231 (citing *MacArthur Co. v. John-Manville*, 837 F.2d 89, 92-93 (2d Cir. 1988)).

[86] *See W.R. Grace*, 591 F.3d at 172 (citing *Combustion Engineering*, 391 F.3d at 230-31).

pierce the corporate veil [i]s not itself a cause of action but rather a means of imposing liability on an underlying cause of action, such as a tort of a breach of contract …" against the underlying corporate entity.[87]  Applying this principle to a creditor's claim against a non-debtor third-party, the District of New Hampshire held that to the extent a third-party cannot be held liable for abusing a debtor's corporate form "without first succeeding on its claim against" the debtor, then the cause of action impacts the debtor and creates jurisdiction.[88]

The District of Michigan noted in its opinion that "debtor Lakeshore and non-debtor Rachmale are one and the same, as alleged by Superior …"[89]  Superior, in fact, alleges that Lakeshore entered into the joint venture agreements with Superior "at the direction of Rachmale."[90]  It is noteworthy that Superior first filed an action directly against Lakeshore in state court, and only filed the current Proceeding against Rachmale after the original action was halted due to the bankruptcy case in this Court.[91]  The District of Michigan concluded that the intertwined conduct alleged against Rachmale involving the Debtors fulfilled the requirements of "related to" jurisdiction under *Dow Corning*.[92]

---

[87] 1 William Meade Fletcher, *Fletcher Cyclopedia of Corporations* § 41.28, at 166-67 (rev. ed. 2006) (footnotes omitted).

[88] *New England Wood Pellet, LLC v. New England Pellet, LLC*, 419 B.R. 133 (D.N.H. 2009).

[89] *But see Superior Contracting Group*, 2016 WL 1242432, at *3.

[90] *Id.*

[91] *See id.*

[92] *Id.*

Although Superior has not joined any Debtor entities in the Proceeding and *Dow Corning* is not applicable precedent in this jurisdiction, the veil piercing claims likely maintain "related to" jurisdiction as derivative claims.  It is clear Superior alleges Lakeshore to be the alter ego of Rachmale, and the Proceeding hinges on the same conduct as the original cause of action filed against Debtor Lakeshore in the Tennessee Chancery.  This clearly falls within the boundaries of "related to" jurisdiction for derivative claims.  Any dispositive finding that results in piercing the corporate veil for the Proceeding will require a finding of liability against Debtor Lakeshore, satisfying the *Pacor* test.

***

In sum, the Court's "related to" jurisdiction over this Proceeding is then satisfied under both the indemnification provision's coverage and Superior's attempt to pierce the corporate veil.

### 3. Right to Jury Trial

Defendant lastly contends the Court should find that jurisdiction is improper because Superior never waived its right to a jury trial.

The Seventh Amendment to the U.S. Constitution preserves the right to a jury as follows: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved …"[93]  However, whether or not Superior maintains a right to a jury trial has no bearing on a bankruptcy court's subject

---

[93] U.S. Const. amend. VII.

matter jurisdiction.[94]  In cases where a right to a jury trial exists, the District of Delaware has generally allowed this Court to "oversee pretrial matters … withdrawing the proceeding' only when it is ripe for a jury trial."[95]

Superior clearly reserved its right to a jury trial in the complaint filed in the Western District of Tennessee.  But whether or not a jury trial is proper in the Proceeding, the reservation of a right to a jury trial does not prevent the exercise of "related to" jurisdiction by this Court.

A right to jury trial may provide a reason for a withdrawal of reference, as Superior suggests it could, but the argument is not ripe for review.  First, "Congress has mandated that a party seeking to withdraw a proceeding from a bankruptcy court to a district court can do so only upon the filing of a 'timely' motion."[96]  Since no motion has yet been filed by Superior for withdrawal, withdrawal is inappropriate at this time. Second, withdrawal is not mandated for proceedings such as this one, which assert only non-core claims.[97]  Nor is asserting the right to a jury trial and refusing to consent to such trial before the bankruptcy court "itself sufficient cause for discretionary

---

[94] *Liquidating Trustee of the MPC Liquidating Trust v. Granite Financial Solutions, Inc. (In re MPC Computers, LLC)*, 465 B.R. 384, 394 (Bankr. D. Del. 2012).

[95] *SNMP Research Int'l, Inc. v. Nortel Networks, Inc. (In re Nortel Networks, Inc.)*, 539 B.R. 704, 712 (D. Del. 2015) (citing *Matter of Delaware & Hudson Ry. Co.*, 122 B.R. 887, 897 (D. Del. 1991)).

[96] *JLL Consultants, Inc. v. Goldman Kurland & Mohidin, LLP (In re Agfeed USA, LLC)*, 565 B.R. 556, 565 (D. Del. 2016) (citing 28 U.S.C. § 157(d)).

[97] *Agfeed USA*, 565 B.R at 564 (citing *Hatzel & Buehler, Inc. v. Cent. Hudson Gas & Elec. Corp.*, 106 B.R. 367, 371 (D. Del. 1989)).

withdrawal," serving merely as one factor for consideration.[98]   Any decision on withdrawal would require further briefing to analyze factors concerning "cause."[99]

In sum, although Superior has not waived its alleged right to a jury trial, this does not change the jurisdiction of the Court to hear the Proceeding.  It is established practice to keep jury trials in the bankruptcy court for pre-trial proceedings, and then let the district court proceed with the final trial.  Nor is a withdrawal of reference appropriate without a motion.

***

Given the above, this Court finds "related to" jurisdiction for the Proceeding because of (1) the law of the case doctrine, (2) the broad indemnification applied to Rachmale through Debtor LTC, and (3) the claim to pierce the corporate veil against Rachmale due to his alleged control of Debtor Lakeshore.  The Court will also refrain from removing the reference at this stage in the Proceeding.

## B. Abstention

The Order next asks whether this Court should abstain from hearing this Proceeding.  As discussed above, because this Court may only consider mandatory abstention under § 1334(c)(2) upon motion of a party, the Court's Order may only review for the applicability of permissive abstention.

Federal courts maintain broad discretion to abstain from actions involving state law claims "in the interest of justice, or in the interest of comity with State courts or

---

[98] *Id.* at 566 (quoting *Official Comm. of Unsecured Creditors v. Fed. Indus. Prods.*, 2007 WL 211179 at *2 (D. Del. Jan. 26, 2007)) (internal quotations omitted).

[99] *Id.* at 563 (quoting *In re Pruitt*, 910 F.2d 1160, 1171 (3d Cir. 1990)).

respect for State law."[100]   Yet "[a]bstention can exist only where there is parallel proceeding in state court.  That is, inherent in the concept of abstention is the presence of a pendant state action in favor of which the federal court must, or may, abstain."[101] Furthermore, to the extent a bankruptcy court may exercise permissive abstention under § 1334(c)(1), it may only do so to for "proceedings arising under title 11 or arising in or related to a case under title 11."[102]

Logically then, a bankruptcy cannot abstain from a proceeding that commenced in federal court and which maintains diversity jurisdiction separate from the bankruptcy court's jurisdiction under title 11.  The Proceeding was commenced in the Western District of Tennessee, which found diversity jurisdiction exists in its own written opinion transferring venue.  No state proceeding against Rachmale exists; if a parallel state proceeding exists at all, it is against *Lakeshore* in the Tennessee Chancery Court.  This proceeding has been stayed since the Debtors bankruptcy.

To the extent that the Tennessee state action could proceed, it could only do so as a pre-petition claim in this Court, which Superior has not sought.[103]  Indeed, it could very well be that Superior has not filed a claim because they hope to achieve a greater

---

[100] 28 U.S.C. § 1334(c)(1); *see Matter of Gober*, 100 F.3d 1195 (5th Cir. 1996).

[101] *In re Sportsman's Warehouse, Inc.*, 457 B.R. 372, 390 (Bankr. D. Del. 2011) (citing *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers (In re General Teamsters, Warehousemen & Helpers Union Local 890)*, 124 F.3d 999, 1009 (9th Cir. 1997)). Within the Delaware Bankruptcy Court, judges have split on whether the requirement of a pendant state court proceeding is an absolute requirement for permissive abstention, but the prior opinions of this Court have consistently ruled that such a state court proceeding is required. *See also In re Finova Capital Corp.*, 358 B.R. 113, 118 (Bankr. D. Del. 2006) (finding that bankruptcy courts generally do not permissively abstain where no state proceeding exists, although leaving the possibility of an abstention open).

[102] 28 U.S.C. § 1334(c)(1).

[103] A review of the claims registry for LTC shows no proof of claim filed by Superior Contracting Group.

recovery outside the bankruptcy process by pursuing Rachmale.  The dilemma of the Court if it did not hear the Proceeding evokes the concerns noted by the Ninth Circuit: "If [the] Court were to abstain, nothing would happen because there is only one lawsuit."[104]

For the reasons stated *supra*, the Court does not permissively abstain from hearing the Proceeding.

### C. Remand to State Court

The last question advanced by this Court in its Order was whether the Proceeding should be remanded to state court.  The considerations governing equitable remand pursuant to § 1452(b) are identical to those factors governing abstention under § 1334(c)(1).[105]  However, "remand, by definition, must return the remanded matter to the court from which it was *removed*."[106]  The term "remove" is a term of art, generally understood to mean the transfer of an action from state to federal court, as opposed to a transfer from one federal district court to another.[107]

Remand to state court would be inappropriate in this case.  Although the Proceeding only addresses state causes of action, it was commenced in federal court. The only state court action related to this dispute was filed in the Tennessee Chancery Court against Lakeshore, which was stayed upon the filing of the Debtors' bankruptcy.

---

[104] *Sec. Farms*, 124 F.3d at 1010 n. 10 (quoting *In re Duval County Ranch Co.*, 167 B.R. 848, 849 (Bankr. S.D. Tex. 1994)).

[105] *In re Maxus Energy Corp.*, 560 B.R. at 124 n. 76.

[106] *Federal-Mogul*, 282 B.R. at 317 (citing *Petrofsky v. ARA Group, Inc.*, 878 F.Supp. 85 (S.D. Tex. 1995)) (emphasis added).

[107] *See LMRT Assoc., LC v. MB Airmont Farms, LLC*, 447 B.R. 470, 472-73 (E.D.Va 2011).

This Proceeding was subsequently filed as a separate suit against Rachmale in the Western District of Tennessee.

Remand to a state court is consequently unavailable for the Proceeding.

## <u>CONCLUSION</u>

The Court finds that "related to" jurisdiction exists over the Proceeding as supported by this opinion and the prior ruling of the Eastern District of Michigan, permissive abstention is inappropriate, and remand to state court is unavailable.

An order will be issued.